His declaration, in detail, explains why that is not the case, why that does not happen. So do I understand you to be conceding then that Siemens does include position information? No. Not at all? No. What about in claim 4, line 40, it says, and this is at JA02714, formatting also reserves space on the disk for various tablets. For example, a bit map table is set up in which the status of every sector is indicated. Yes. That actually provides the answer to Judge Dyke's earlier question. What the patent says, and what that particular language says, and Dr. Mansurapur talks about this extensively in his declaration, is that the bit map status table, according to the specification, has two bits per half track. Those are two digits, so 00 for something that hasn't been initialized. That's all it has. But then you might logically ask, as I think Your Honor, Judge Dyke is doing, how do you correlate that to a position? Because you have to know what the status relates to. Right. And the answer, particularly since it uses the word map, a map normally has a location. That's an argument that Pete had made. But as Dr. Mansurapur points out, the way he understands this disclosure and the specification is that you have the status on the disk, the status is recorded in a predetermined area, but the location could be recorded, for example, and he explains why the location would be something that would be determined by the drive itself, not by the disk. That is, for example, you might have the first half track. Okay, but the board doesn't have to accept that testimony, right? Well, does the board have to accept the testimony? If the board doesn't accept the testimony, the board has to cite contrary testimony or explain why it's rejecting the expert testimony. It has to explain? Well, there's nothing here in the record from TSST. It doesn't have to explain why it reaches the result. It doesn't have to address all the evidence in the record, right? It doesn't have to address all the evidence, Your Honor, but it has to address at least some of the evidence. You are entitled to a rational discussion of what the analysis process the board went through below so that you can determine whether or not to affirm or to reverse or to vacate and remand. Well, look at page 13 of the board's discussion. The board says, as discussed above, Siemens discloses half tracks being listed in a status fit map. We find that this is a disclosure of position information recorded on a predetermined area of a recording medium. They then go on to explain it further, and they say, as discussed above, that Siemens further discloses keeping track in the status fit map of which half tracks have been formatted as well as which half tracks have not been formatted. That's their explanation. They do have an explanation. The problem is there is no evidence to support their explanation. If you look at the hassle of the interpretation of Siemens, well, it is their interpretation of Siemens, but there is expert testimony from LG's expert that on the status fit map, the way he reads the specification in his expertise, the way he reads it is you have just the two bits there. That sounds to me like an argument that the board has to accept your expert testimony over its own reading of the reference. Well, the board is not permitted to use its own technological expertise to override all of the evidence. It must be able to interpret references. It does that all the time. Of course it can interpret references, Your Honor, but here you have a technical question as to whether this language in the specification includes, because whether this language in the specification means that the position information is recorded on a predetermined area on the disk. Mansouripour explains what that means is that the position information is on the drive, and when the drive interacts with the bit information on the disk, it can reach a conclusion about the position. But the position information is not recorded on the disk in a predetermined location, and Hesselink says nothing to the contrary. And the board, I would submit, is not permitted when there is no evidence on one side on a technical issue and there is evidence on the other side on a technical issue to reject the only technological evidence because it... You mean the side that puts in expert testimony wins? If the other side puts in no expert testimony and the expert testimony is reasonable... technical witnesses or an expert testimony will always win unless there is an expert who disagrees. How about if the board, presumably with some expertise in this area, disagrees? They can't use their own judgment? Let's... First of all, we're dealing with a substantial evidence standard. Substantial evidence means you have to have evidence. I agree that if the board said, we have read Dr. Mansour Khor's declaration. We believe that he's wrong for the following reasons. Why wouldn't Column 4 of the Siemens patent be evidence? That's evidence also, correct? Column 4 of the Siemens patent is most definitely evidence, but it's being interpreted by an expert who says, this is what it means. The board disagrees with that interpretation. It has its own interpretation of that evidence. That's an evidentiary ruling. It's an evidentiary ruling. I'm not sure that it's an evidentiary ruling, Your Honor. The board... What the board did here is it... First of all, it did not discuss the complete lack of evidence on this technical issue on the other side, and it did not address the substance of why it should reject the only expert testimony on this issue. But it interpreted the Siemens reference and said it means this. We've had cases saying that the board is entitled to do that. That's what it's supposed to do. It's an expert agency, and here's a reference. They can't rely on things that aren't in references, but they can certainly interpret the reference, and a lot of these cases would come out the other way if they weren't entitled to do that. What I would ask the court to do is to compare two sets of pages in the joint appendix. At pages 2872 and 2873, you have a detailed explanation by Dr. Mansooripour as to what this precise language that you asked about, Judge Reyna, means, what it means technologically. On the other hand, at page 2766, you have the only discussion by TSST's expert of the Siemens reference with respect to these claims. And there is no discussion at all of whether status information is equivalent to position information or whether the position information is recorded on a predetermined area of the disk. So you have a, I would submit, a very detailed and well-argued set of evidence on the one hand. You have no evidence on the other hand, and the board is not parsing the evidence in front of it and saying, I reject this because. The board does say that they're not persuaded. They say they're not persuaded, but they don't say why. They don't take on. Sure they do. They point to column four and it says, this disclosure persuades us. It's the half-tracks being listed in the status bitmap. But they don't say, Judge Reyna, Mansooripour says this means X. We don't accept that testimony for the following reason. We don't believe it. This contrary testimony. No analysis. They don't have to cite chapter and verse and describe why they're rejecting the testimony. They have to explain why they reached the result, which they did, which they do here. I mean, in every case they've got to go through a listing and say we've considered this piece of evidence, that piece of evidence, and explain why they've rejected all of them. A general explanation as to why they reached the result is all that's required, no? I would submit no. I would submit that the substantial evidence standard requires when you have no evidence, none, and we know there's no evidence because if you look at 2766, you see the only thing that their experts said about Siemens in this context, and you have detailed evidence on the other side, you as an appellate court are entitled to a rational explanation, a written explanation from the PTAB as to why they didn't accept the only evidence that was in front of them. It doesn't mean that they can't do their own interpretation of references, but they are not there as scientific experts. There are scientific experts who are in front of them, and if you have scientific evidence on the one side and nothing on the other, substantial evidence requires that if they're going to reject the only evidence that's in front of them, they explain why. You're not doing the substantial evidence standard in quantitative terms. You know, and to follow your line of reasoning, if one side has two experts and the other side's got one, the one with two wins. It's not the substantial evidence rule. Well, first, I think the substantial evidence rule has a quantitative component, but here I'm talking about a qualitative issue. That is, evidence on the one side and zero evidence on the other side, zero, nothing. I don't think you're going to get a lot of cases with no evidence on the other side. What would be the case if the question was, before the PTAB, what does Siemens mean and what does the patent mean, and there were no experts at all? They simply submitted it on the record. I think then they could decide. You think what? I think then they could decide. And be affirmed? I think so, assuming that the court, again, felt that the substantial evidence standard was met in the sense that, you know, their decision wasn't irrational. But here you have evidence. You have an expert who deals with this issue, not in a conclusory fashion, but in a detailed and specific fashion. I think I get your point. I hear you. You're well into your rebuttal time here. Do you want to save it? I'd like to save a minute and 13 seconds, if you don't mind, Your Honor. Thank you. We'll give you a minute and a half. Thank you. Mr. Arroyo. Good morning again, Your Honors. May it please the court. First point, the references are evidence. The Siemens reference is evidence. There's plenty of case law along those lines. LG argues that Siemens fails to disclose determining whether initiations should be performed based on position information. The board explained properly why LG is wrong. Substantial evidence supports the board's decision. First, Siemens expressly states that it stores a BIP map on the disk. Siemens expressly states that that BIP map maps status bits to particular half tracks. Siemens at Figure 5, Step 52. At Column 4, Lines 41 to 50. At Column 5, Lines 32 to 36. At Column 7, Lines 29 to 37. At Column 8, Lines 8 to 20. For instance, Siemens explains that status bits 00 means that an area is untested, which means non-initialized. Siemens expressly states that track numbers indicate position on the disk. If you look at Siemens, Column 3, Lines 19 to 21. It says, can then be located by giving its track number to fix its radial distance from the center of the disk and its geometric sector number to fix its angular position. That's position information. The half tracks listed in the BIP map are clearly position information. That's what the board found. The board found, for instance, in the final written decision at page 11 and page 13. Siemens expressly states that the half tracks are listed in the BIP map. LG has repeatedly said in its briefs and today that the only thing in the BIP map is status bits. That's plain wrong. Siemens says, and the board quoted Siemens, where Siemens says that the half tracks are also listed in the BIP map. Column 7 of Siemens, Lines 29 to 33. It says, quote, half tracks listed in the status BIP map. Siemens, which is evidence, is telling us that the half tracks, which are position information, are in the BIP map. This argument that the only thing in the BIP map is status bits is, to put it mildly, it's plainly wrong. The board's decision is supported by substantial evidence. LG, in its briefs, also argues that Siemens fails to disclose setting an initialization mode in accordance with detecting a recording command. That wasn't mentioned today, but it's in the briefs. LG is wrong again. Step 50 in Figure 5 of Siemens expressly shows detecting a write command, a write command, W-R-I-T-E. A write command is a recording command. Detection of that write command triggers the initialization mode in at least steps 52 and 53. Therefore, Siemens does clearly in Figure 5, it detects a recording command, and it triggers this initialization process. Again, the PTAB's decision is supported by substantial evidence. That's all I had, Your Honor. Okay. Thank you, Mr. Rao. Thank you very much. Mr. Lieberman, you've got a minute and a half. A minute and a half plus. Thank you, Your Honor. Again, I would just ask this... How would the deputy set it for a minute and a half plus? All right. Go ahead. Again, I would simply ask this Court to compare the one page of the Hesselink Declaration that relates to this issue with the four pages of detailed analysis of the specification in the Mansourpour Declaration and see whether the PTAB actually dealt with the arguments made by Dr. Mansourpour. I would submit that they did not. Again, on a technical issue, and there's a technical question here as to whether or not the position information is in the status bitmap table or whether the position information is, for example, on the drive, which would not be covered by the claims. The PTAB was not at liberty to simply take its own interpretation of that technical language in the reference. It was required to look at it and examine it and to compare the expert testimony that was in front of it. That's why we have expert testimony. Okay. Thank you, Your Honor. Thank you, Mr. Leary. Thank both counsel. The case is submitted.